## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

JAMES KEVIN RUPPERT,

       Plaintiff,

v.                                     CV 13-0054 JAP/WPL

JUSTIN RODGERS, SECURITY THREAT
INTELLIGENCE UNIT; LIEUTENANT J. VIGIL,
DISCIPLINARY/GRIEVANCE OFFICER;
SARGEANT RIVERA, DISCIPLINARY; and
SARGEANT TORELLA,

       Defendants.

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

James Kevin Ruppert is convinced that staff members at the Guadalupe County
Correctional Facility ("GCCF") are out to get him. He claims that after he filed a federal lawsuit
against the facility's staff in early 2009, a prison employee threatened him with bodily harm in
2010, a fellow inmate attacked him several months later, and three other prison employees
trumped up disciplinary charges against him in 2012. Ruppert is certain that these events are
interrelated and that Defendants Justin Rodgers, J. Vigil, "Sargeant" Rivera, and "Sargeant"
Torella have retaliated against him for exercising his First Amendment rights. Defendants,[1] on
the other hand, assert that their interactions with Ruppert have not been colored by any
retaliatory motive and have nothing to do with his first federal lawsuit or the inmate attack.

Defendants filed a Motion for Summary Judgment in this action, and after Ruppert took
six weeks to respond, they moved to strike that response. Ruppert countered with his own

---

[1] As all other original Defendants in this case have been dismissed (*see* Doc. 14), the term
"Defendants" is used here only to refer to Rodgers, Vigil, Rivera and Torella unless context indicates
otherwise.

Motion for Judgment on the Pleadings and a second motion addressing claims that have previously been dismissed. Having considered the filings and the relevant law, and being otherwise fully advised in these matters, I recommend that the Court grant Defendants' summary judgment motion (Doc. 30) and deny Defendants' motion to strike (Doc. 34), Ruppert's Motion for Judgment on the Pleadings (Doc. 39), and Ruppert's "Motion of Redirect Side Barr Notation on Life Sentence" (Doc. 40).

**FACTUAL BACKGROUND**

Because this is a summary judgment motion, the Court must construe the facts in the light most favorable to Ruppert. *See Thomson v. Salt Lake Cnty.*, 584 F.3d 1304, 1312 (10th Cir. 2009) (citation omitted). Unless otherwise indicated, the facts described herein are not in dispute.

Ruppert was incarcerated at GCCF in Santa Rosa, New Mexico, at all relevant times. In February 2009, Ruppert filed a complaint in this Court against several New Mexico Corrections Department officials. *Ruppert v. Bravo*, No. 09-cv-0138 MV/LFG ("*Ruppert I*"), Doc. 1 (D.N.M. Feb. 11, 2009).[2] Rodgers was one defendant in that action, while "J. Torello," the job coordinator at GCCF and the wife of Defendant Torello in this action, was another. The Court dismissed most of these claims in September 2009, *see Ruppert I*, Doc. 46 (D.N.M. Sept. 22, 2009), and the rest almost two years later, *see Ruppert I*, Doc. 142 (D.N.M. June 17, 2011). Ruppert unsuccessfully appealed this outcome to the Tenth Circuit, *see Ruppert v. Aragon*, 448 F. App'x 862 (10th Cir. 2012) (unpublished), and the Supreme Court denied his petition for writ of certiorari in October 2012, *see Ruppert v. Aragon*, 133 S. Ct. 137 (2012) (mem.).

---

[2] I take judicial notice of this and other relevant filings from Ruppert's first lawsuit. *See Turner v. McGee*, 681 F.3d 1215, 1217 n.2 (10th Cir. 2012) ("[F]ederal courts, in appropriate circumstances, may take notice of proceedings . . . if those proceedings have a direct relation to matters at issue." (quotation omitted)).

In the meantime, Ruppert was placed in pre-hearing detention on February 2, 2010, after allegedly threatening a GCCF employee, and he was assigned to a different cell three days later.[3] According to Ruppert, he and Torello engaged in a conversation on February 9, 2010, in which Ruppert asked Torello to talk to his wife to see if she could "give [him] a break." Torello allegedly warned that Ruppert was "burning bridges," and when Ruppert persisted, Torello purportedly responded that he could "take care of [Ruppert]" and have him injured for the price of a pack of cigarettes. *See Ruppert I*, Doc. 73 Ex. 3 at 2-3; Ex. 7 (D.N.M. Apr. 7, 2010). For his part, Torello states in a sworn affidavit that he does not remember such an exchange taking place, and he states that he has never threatened Ruppert's life or arranged for Ruppert to be injured. (Ex. F.)[4] Nonetheless, no one disputes that Ruppert was attacked by his cellmate while sleeping in the early morning hours on April 19, 2010, and Ruppert insists that the attack resulted from a "contract hit" placed on him by Torello.

Fast forward over two years. On August 28, 2012,[5] the GCCF mailroom supervisor notified Rodgers, an officer with the facility's Security Threat Intelligence Unit, that the facility had received "an unusually large number of envelopes" containing legal materials, though not privileged legal correspondence, from the New Mexico Supreme Court Law Library. (Ex. H at 1-2.) Rodgers conducted several confidential informant interviews, which revealed allegations that

---

[3] In their answer, Defendants deny all factual allegations on page 9 of Ruppert's complaint, which includes the allegation that Ruppert was reassigned to a new cell on February 5, 2010. In their summary judgment motion, however, Defendants appear to concede that a cell change was initiated after Ruppert voiced threats against the GCCF employee, though they deny Torello's involvement in that reassignment.

[4] Unless otherwise stated, all exhibits are to Defendants' summary judgment motion (Doc. 30).

[5] The affidavit of GCCF's mailroom supervisor states that the relevant events occurred on "August 28, 2009." (Ex. H at 1.) Although Defendants repeat this date in their motion for summary judgment (*see* Doc. 30 at 6), they state elsewhere in the same document that the supervisor spoke to Rodgers on August 28, 2012 (*see id.* at 14). The sequence of subsequent disciplinary action and other evidence in the record support the conclusion that the latter date is correct and that the 2009 date is a typographical error. (*See, e.g.*, Ex. K at 2-3, 17.)

Ruppert was sending out requests for free legal materials with self-addressed stamped envelopes and that he used other inmates' names without their permission so as to receive more free legal material. (Ex. K at 5, 15.) According to his report, Rodgers also spoke with Ruppert and showed copies of the envelopes to him, and Ruppert admitted that he had requested the mailings even though he used other inmates' names on the envelopes. (*Id.* at 15.)[6] Rodgers then charged Ruppert with fraud, and a hearing was conducted before Vigil, a disciplinary hearing officer, on September 20, 2012. (*Id.* at 2-3.) Vigil found Ruppert guilty of fraud on October 4, 2012, and New Mexico Corrections Department Warden Janet Bravo approved Vigil's recommended sanctions four days later. (*Id.* at 1.)

According to the mailroom supervisor, Ruppert's outgoing mail was not stopped at any time after the discovery of the large volume of incoming mail. (Ex. H at 2.) The GCCF outgoing legal mail log for 2012 shows mailings from Ruppert to Bravo on August 29, to the Supreme Court on September 13, to an employee of the state Corrections Department on September 17, to the Kirk Chavez Law Firm on October 9, to this Court on October 12, and to both defense counsel in the first lawsuit and the Supreme Court on October 16. (Ex. G at 6-11; Ex. H at 2.) The Supreme Court docket for Ruppert's first lawsuit shows that his petition for rehearing was filed as of the latter date (Ex. I), and the office of the attorney for one defendant in that case acknowledges receiving mail from Ruppert one day later (Ex. J).

## PROCEDURAL BACKGROUND

Ruppert filed the complaint in this action (Doc. 1) in January 2013. Ruppert alleges that Torello threatened him and caused another inmate to assault him "in order to deter [Ruppert]

---

[6] Ruppert accuses some Defendants of fabricating evidence for the related disciplinary charge, and he asserts that GCCF policies make it easy for prison staff to falsely record a prisoner's admission of guilt. (*See, e.g.*, Doc. 33 at 2-3.) However, Ruppert never denies that he admitted to the matters recounted in Rodgers's report.

from expos[]ing the issues"; that Rodgers stopped his outgoing mail to interfere with his litigation activities in the previous federal lawsuit and has also sought to pay other inmates to attack him; and that Rodgers, Vigil and Rivera fabricated the evidence that led to his disciplinary report, then destroyed this evidence. Ruppert characterizes each of these activities as retaliation for pursuing his previous federal lawsuit, and he brings these claims under the First Amendment.

As the Court recognized in a Memorandum Opinion and Order ("MOO") filed in July 2013, Ruppert's complaint also named other Defendants and brought numerous additional claims:

> [Ruppert claims that] Defendants Corrections Department and GEO Group allegedly use disciplinary actions pretextually to extend sentences and increase private profit. [Ruppert] asserts that New Mexico statutes are hostile to rehabilitation of life-term convicts, and that he is denied adequate access to legal materials. . . . [Ruppert] contends that his exclusion from rehabilitation programs violates his due process rights.

(Doc. 14.) The Court rejected each of these claims and dismissed eleven Defendants in the July 2013 MOO, a decision that Ruppert challenged repeatedly thereafter. (*See* Doc. 16; Doc. 21; Doc. 22; Doc. 27.) The Court issued a second MOO reaffirming its initial decision as to these claims in January 2014 (Doc. 42) and recently overruled Ruppert's subsequent objections (Doc. 55). Ruppert is presently seeking appellate review of these matters with the Tenth Circuit.

Meanwhile, Ruppert's retaliation claims against the remaining Defendants proceed. Approximately one month after filing their answer, Defendants filed the instant motion for summary judgment asserting that Ruppert has failed as a matter of law to show that they retaliated against him in violation of the First Amendment. Thirty days later, in the absence of any response from Ruppert, Defendants filed a Notice of Completion of Briefing. Ruppert filed a response two weeks later, and Defendants seek to strike that document as untimely. Defendants did not file a reply.

On December 18, 2013, Ruppert filed two additional motions. The first, entitled "Motion for Judgment on the Pleadings," appears to argue that Defendants have now waived all defenses to his complaint because they filed their summary judgment motion while his objections to the Court's July 2013 MOO were pending. Defendants respond that this motion fails to establish that judgment on the pleadings is appropriate; Ruppert did not file a reply. The second, "Motion of Redirect Side Barr [sic] Notation on Life Sentence," reasserts Ruppert's previously dismissed claim regarding the hostility of New Mexico statutes to the rehabilitation of life-term convicts. Defendants did not file a response to the latter motion.

DISCUSSION

The fulcrum issue before the Court is whether Defendants are entitled to judgment as a matter of law on Ruppert's claims. Before reaching this question, however, I will first address the other documents that are in that motion's orbit.

## I.        Plaintiff's Motion of Redirect Side Barr Notation on Life Sentence

Though difficult to follow, Ruppert's "Motion of Redirect Side Barr Notation" appears to have no bearing on any remaining claims in this action. Instead, the motion is entirely focused on Ruppert's claim regarding the rehabilitation of convicts serving life sentences under New Mexico law. Ruppert's request for relief in the motion is simply that the Court "adjudicate said issue of no penalty statute." Like many of Ruppert's other filings (*see* Doc. 16; Doc. 21; Doc. 22; Doc. 27; Doc. 44), I construe this motion as a request that the Court invoke its general discretionary authority to revise its previous ruling that Ruppert has failed to state a claim as to this issue. *See Guttman v. New Mexico*, 325 F. App'x 687, 690 (10th Cir. 2009) (unpublished). The Court has twice declined to revise that ruling, and this motion presents no reason to do otherwise. Accordingly, I recommend that the Court deny this motion.

**II.      Plaintiff's Motion for Judgment on the Pleadings**

A party may move for judgment on the pleadings after the pleadings are closed, but early enough not to delay trial. Fed. R. Civ. P. 12(c). A court considering such a motion should "accept all facts pleaded by the non-moving party as true and grant all reasonable inferences from the pleadings in favor of the same." *Park Univ. Enters., Inc. v. Am. Cas. Co. of Reading, PA*, 442 F.3d 1239, 1244 (10th Cir. 2006). In the context of a plaintiff's motion for judgment on the pleadings, this means that the reviewing court must accept all of the factual allegations in the defendant's answer as true and construe them in the light most favorable to the defendant. *See id.* The motion may be granted "only when it appears that the [non-moving party] can prove no set of facts in support of the claims that would entitle [him] to relief." *Mock v. T.G. & Y. Stores Co.*, 971 F.2d 522, 528-29 (10th Cir. 1992) (citation omitted).

Here, Ruppert does not attempt to show that he may prevail on his claims if the factual allegations in Defendants' answer are accepted as true. Rather, Ruppert insists that his objections to the Court's July 2013 MOO stayed all other matters. As such, Ruppert claims, Defendants improperly filed their motion for summary judgment, and therefore "Defendants waive any defense" to his factual or legal assertions. The remainder of Ruppert's motion appears geared toward again asserting that the Court erred in disposing of all but his retaliation claims.

There is no rule requiring a stay of proceeding simply because a party has objected to the Court's previously rulings. There is also no rule prohibiting Defendants from filing a motion for summary judgment while the Court considers objections to distinct legal questions on which it has already ruled, and Ruppert cites to no authority for this frivolous argument. Instead, a party may generally file a summary judgment motion "at any time until 30 days after the close of all discovery," FED. R. CIV. P. 56(b), and that deadline has not yet passed in this case. Finally, even

if the Court were to accept his frivolous timeliness argument, Ruppert points to no authority standing for the proposition that the Court may sanction a party for filing an untimely summary judgment motion by thereafter accepting all of the non-moving party's factual allegations and legal assertions as true.

Ruppert cannot show that he is entitled to judgment in his favor if the allegations in Defendants' answer are accepted as true, and his argument that Defendants have waived all defenses and factual allegations is meritless. Further, to the extent that Ruppert seeks to challenge the Court's July 2013 MOO here, his motion should be denied for substantially the same reasons justifying denial of his Motion of Redirect Side Barr Notation on Life Sentence. Accordingly, I recommend that the Court deny this motion.

### III.   Defendants' Motion to Strike

Defendants contend that Ruppert's response to their summary judgment motion, filed six weeks after the motion itself was filed, is untimely. In their request for relief, Defendants ask that the Court strike Ruppert's untimely response and enter summary judgment in their favor. Ruppert, for his part, characterizes Defendants' summary judgment motion as unripe and as a trick designed to lure him into somehow defaulting on his objections to the Court's July 2013 MOO by filing a response. He also claims that he never received notice that a response was required and that he cannot afford to purchase a copy of the Court's rules.

In considering Ruppert's filings, I am mindful of his pro se status and the liberal construction afforded to his pleadings. *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) ("A pro se litigant's pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers.") Still, pro se litigants are not excused from complying with a court's procedural rules. *See, e.g.*, *Ogden v. San Juan Cnty.*, 32 F.3d 452, 455

(10th Cir. 1994) (citation omitted). In this Court, a response brief must be filed within fourteen days of service of the motion as computed by the Federal Rules of Civil Procedure. *See* D.N.M.LR-Civ. 7.4(a). Although an extension of time may be granted for good cause after this deadline has passed, the party seeking this extension must show that he failed to act because of excusable neglect. FED. R. CIV. P. 6(b)(1)(A).

Even if the Court were to interpret Ruppert's response to the motion to strike as a request for a deadline extension under Rule 6, his insistence that he was excused from timely responding to Defendants' summary judgment motion by the pendency of certain objections is plainly frivolous and cannot constitute either good cause or excusable neglect. Moreover, Ruppert's ignorance of the rules does not rise to the level of excusable neglect, let alone good cause, even in light of his pro se status. *See Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 392 (1993); *see also Goldwyn v. Donahoe*, No. 12-4099-JTM, 2013 WL 3778919, at *2 (D. Kan. July 18, 2013) (unpublished) (citing numerous cases for the proposition that a party's pro se status "does not in and of itself constitute an excuse for the litigant's non-compliance with procedural rules").

On the other hand, it does not appear that my analysis of Defendants' motion for summary judgment would change significantly if I were to strike Ruppert's response. Although Ruppert's brief, like many of his other filings, is "repetitive and difficult to understand" (*see* Doc. 55 at 3), it appears to largely repeat the factual allegations presented in his complaint and does not feature much in the way of new legal argument. Further, though he submits a few new documents of questionable relevance, Ruppert's attached exhibits consist primarily of marked-up versions of exhibits already submitted in this action.

For that matter, even if I were to recommend striking Ruppert's response brief, this course of action would not automatically entitle Defendants to summary judgment. Although Defendants request this outcome, "a party's failure to [timely] file a response to a summary judgment motion is not, by itself, a sufficient basis on which to enter judgment against the party." *Reed v. Bennett*, 312 F.3d 1190, 1195 (10th Cir. 2002).[7] It is true that "[b]y failing to file a response within the time specified by the local rule, the nonmoving party waives the right to respond or to controvert the facts asserted in the summary judgment motion." *Id.*; *see also* D.N.M.LR-Civ. 7.1(b) (noting that a party's failure to timely respond constitutes his consent to grant the motion). However, as Ruppert correctly observes in his motion for judgment on the pleadings, summary judgment cannot be granted by default. Instead, the summary judgment movant still bears the burden of demonstrating that no genuine issue of material fact exists and that he is entitled to judgment as a matter of law before his motion may be granted. *Reed*, 312 F.3d at 1195. "If the evidence produced in support of the summary judgment motion does not meet this burden, 'summary judgment must be denied *even if no opposing evidentiary matter is presented*.'" *Id.* at 1194 (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 160 (1970)). In short, even if Ruppert's response were stricken from the record, Defendants would still bear the burden of showing that summary judgment is appropriate before their motion may be granted.

Given these factors, I find that the interests of justice weigh in favor of considering Ruppert's response when addressing Defendants' summary judgment motion. Accordingly, I recommend that Defendants' motion to strike that response be denied.

---

[7] For that matter, neither "(1) the degree of actual prejudice to [Defendants]; (2) the amount of interference with the judicial process; [nor] (3) the culpability of [Ruppert]" weigh in favor of granting judgment against Ruppert as a sanction for his late response. *See Reed*, 312 F.3d at 1195 (citing *Hancock v. City of Okla. City*, 857 F.2d 1392, 1396 (10th Cir. 1988)). Though untimely by several weeks, the filing of Ruppert's response brief has not itself prejudiced Defendants or interfered with the judicial process in any significant way, and Ruppert's confusion regarding the rules arguably reduces his culpability for the late filing even if it does not serve as good cause or excusable neglect for his failure to act.

IV.     **Defendants' Motion for Summary Judgment**

A.  <u>Legal Standards</u>

Summary judgment is appropriate where the pleadings, discovery materials, and affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986). A fact is "material" if, under the governing law, it could have an effect on the outcome of the lawsuit, and the dispute is "genuine" if a rational jury could find in favor of the nonmoving party on the evidence presented. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (citations omitted). At this stage, the Court must "construe the facts in the light most favorable to the plaintiff as the nonmoving party." *Thomson*, 584 F.3d at 1312 (citing *Scott v. Harris*, 550 U.S. 372, 378 (2007)). In ruling on a summary judgment motion, the Court may neither make credibility determinations nor weigh the evidence. *Gossett v. Oklahoma*, 245 F.3d 1172, 1175 (10th Cir. 2001) (quotation marks omitted).

A court cannot resolve material factual disputes at summary judgment based on conflicting affidavits. *Hall*, 935 F.2d at 1111 (citation omitted). For purposes of summary judgment, a prisoner's complaint is treated as an affidavit if it alleges facts based on his personal knowledge and has been sworn under penalty of perjury. *Id.* (citation omitted). However, conclusory allegations without specific supporting facts have no probative value and cannot create a genuine issue of fact. *See Fitzgerald v. Corr. Corp. of Am.*, 403 F.3d 1134, 1143 (10th Cir. 2005); *Annett v. Univ. of Kan.*, 371 F.3d 1233, 1237 (10th Cir. 2004); *Ledoux v. Davies*, 961 F.2d 1536, 1537 (10th Cir. 1992). As is true with all affidavits, statements of mere belief must be disregarded. *Argo v. Blue Cross & Blue Shield*, 452 F.3d 1193, 1200 (10th Cir. 2006).

Finally, as with all pleadings filed by pro se individuals, the Court must liberally construe the allegations contained in Ruppert's complaint. *Northington v. Jackson*, 973 F.2d 1518, 1520-21 (10th Cir. 1992) (citing *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972)). However, the Court must apply the same legal standards applicable to pleadings drafted by counsel. *Id.*

B.  Analysis

The only claims that this Court has not yet dismissed are Ruppert's First Amendment retaliation claims against the four remaining Defendants, which he brings pursuant to 42 U.S.C. § 1983.[8] "Prison officials may not retaliate against or harass an inmate because of the inmate's exercise of his constitutional rights." *Fogle v. Pierson*, 435 F.3d 1252, 1263-64 (10th Cir. 2006) (quoting *Peterson v. Shanks*, 149 F.3d 1140, 1144 (10th Cir. 1998)). In particular, "prisoners have the constitutional right to petition the Government for redress of their grievances." *Hudson v. Palmer*, 468 U.S. 517, 523 (1984). To prevail on a retaliation claim, the inmate "must allege *specific facts* showing retaliation because of the exercise of the [inmate]'s constitutional rights." *Fogle*, 435 F.3d at 1264 (quoting *Peterson*, 149 F.3d at 1144). To recover claims of First Amendment retaliation in particular, the inmate must show that (1) he was "engaged in constitutionally protected activity"; (2) the defendants' actions caused him to suffer an "injury that would chill a person of ordinary firmness from continuing to engage in that [protected] activity"; and (3) the defendants' actions "were substantially motivated as a response to [his] protected conduct." *See McBeth v. Himes*, 598 F.3d 708, 717 (10th Cir. 2010) (quoting *Nielander v. Bd. of Cnty. Comm'rs*, 582 F.3d 1155, 1165 (10th Cir. 2009)). The third prong must be satisfied by showing that "but for the retaliatory motive, the incidents to which he refers,

---

[8] When a person acting "under color of state law" deprives a citizen of any "rights, privileges, or immunities secured by the Constitution and laws[,]" 42 U.S.C. § 1983 provides a remedy. *Monroe v. Pape*, 365 U.S. 167, 172, 184-87 (1961). Defendants do not argue in their summary judgment motion that any of their actions were not committed under color of state law.

including the disciplinary action, would not have taken place." *See Peterson*, 149 F.3d at 1144 (quoting *Smith v. Maschner*, 899 F.2d 940, 949-50 (10th Cir. 1990)) (internal quotation marks omitted).

i.    *Claims Against Defendants in Official Capacity*

Ruppert brings his claims against Defendants in both their individual and their official capacities. (Doc. 1 at 20.) "[U]nder § 1983 . . . a judgment against a public servant 'in his official capacity' imposes liability on the entity that he represents . . . ." *Brandon v. Holt*, 469 U.S. 464, 471-72 (1985). The same is true of § 1983 actions against the employees of private entities acting under color of state law, such as the instant Defendants.[9] *See Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1216 (10th Cir. 2003) (citations omitted); *see also Giron v. Corr. Corp. of Am.*, 14 F. Supp. 2d 1245, 1250 (D.N.M. 1998). However, § 1983 liability against such entities cannot be premised on a theory of *respondeat superior* or vicarious liability. *See Dubbs*, 336 F.3d at 1216 (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978)). Instead, to succeed in his § 1983 action, a plaintiff must show both (1) that his harm was caused by a constitutional violation, and (2) that the entity caused this violation through its own actions. *See, e.g.*, *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 120 (1992).

To establish that the private entity acting under color of state law caused the violation, the plaintiff must show the existence of a custom or policy, the requisite state of mind for the underlying constitutional violation, and a direct causal link between the custom or policy and the alleged violation. *See Dodds v. Richardson*, 614 F.3d 1185, 1202, 1204 (10th Cir. 2010) (quoting *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 404, 405 (1997)). Such a policy or custom may be

---

[9] Although the pleadings do not identify their actual employer, Defendants state in their motion for summary judgment that they are directly employed by GEO Group, a private contractor, rather than the New Mexico Corrections Department. (*See* Doc. 30 at 9.) Defendants do not dispute that GEO Group acted under color of state law at all relevant times.

express, or it may be implied from prevalence or the provision of inadequate training. *See Winters v. Bd. of Cnty. Comm'rs*, 4 F.3d 848, 855 (10th Cir. 1993); *Sauers v. Salt Lake Cnty.*, 1 F.3d 1122, 1129 (10th Cir. 1993). Even a single action may be interpreted as an act of official policy for purposes of establishing § 1983 liability if that action is taken by an official with final policymaking authority over the activity in question. *See Pembaur v. City of Cincinnati*, 475 U.S. 469, 480-83 (1986) (plurality opinion).

As will be shown below, Ruppert has failed to demonstrate that any of the remaining Defendants violated his First Amendment rights. However, even assuming that a constitutional violation had been committed, Ruppert has not shown that this violation was committed as the result of an official custom or policy, either express or implied, promulgated by Defendants' employer. Defendants' exhibits include sworn affidavits stating that their policies and training prohibit retaliation against prisoners for filing grievances or lawsuits or otherwise exercising First Amendment rights, and Ruppert has not countered with any documents based on personal knowledge that refute this assertion. Even the policy document attached to Ruppert's summary judgment response (Doc. 33 Ex. 5) has no bearing on this question, as it only goes toward the New Mexico Corrections Department's policies for risk assessment and does not address the exercise of First Amendment rights. Nor has Ruppert demonstrated that retaliation for the exercise of First Amendment activities is widespread, that Defendants were inadequately trained on these matters, or that Defendants possessed final policymaking authority so as to convert any First Amendment violations into official policy. Accordingly, Ruppert's claim against Defendants in their official capacity must fail.

### ii.     Retaliation Claim against Torello

Ruppert claims that after he was reassigned to a new cell following disciplinary proceedings, he was attacked by his cellmate at the behest of Torello. Ruppert alleges that after he asked Torello to have his wife "give [him] a break," Torello said that Ruppert was "burning bridges," threatened him, and arranged the attack as a "contract hit." Liberally construing his complaint, which was sworn under penalty of perjury and will thus be treated as an affidavit, Ruppert appears to claim that both the threat and the attack were retaliation for the grievances and lawsuit he filed against Torello's wife. In his own sworn affidavit, Torello denies any involvement in Ruppert's cell assignments, denies making any threats on Ruppert's life, and denies any involvement in a contract hit.

Addressing the easier questions first, Ruppert does not appear to claim that Torello was involved in his purportedly adverse cell assignment in early 2010, and at any rate he does not allege specific facts showing such involvement.[10] Additionally, Ruppert has not provided any facts or evidence to support his claim that Torello caused the cellmate's attack. His argument on this latter point amounts to mere conjecture, which is insufficient to allow the contention to survive summary judgment. *See Argo*, 452 F.3d at 1200.

That leaves Torello's threat. The question as to whether Torello actually threatened Ruppert cannot be resolved by the parties' conflicting affidavits, *Hall*, 935 F.2d at 1111 (citation omitted),[11] and as such I must assume that the threat occurred, *see Thomson*, 584 F.3d at 1312

---

[10] On the contrary, Ruppert alleges that other officers fabricated the charges that led to his cell reassignment. The officers in question were either never named as Defendants by Ruppert or have already been dismissed by the Court.

[11] Although he refers to the "threat of contract hit" in his complaint, Ruppert does not describe this encounter in detail there; instead, he expressly refers to "[Doc. 73]" in his original federal lawsuit, which included as an exhibit an affidavit discussing the interaction with Torello. (*See* Doc. 1 at 9.) I liberally construe Ruppert's sworn complaint as incorporating the substance of that affidavit by reference.

(citation omitted). However, Defendants argue that even if Torello made the threat, he is still entitled to judgment as a matter of law on the undisputed facts. Although Defendants apparently concede that Ruppert's grievances and lawsuit against Torello's wife were constitutionally protected activity, and although they do not argue that Torello's alleged threat failed to injure Ruppert in a way that would chill an ordinary person from continuing with that activity, they contend that Ruppert has not shown that the grievances or lawsuit were the "but-for" cause of Torello's threat. Instead, they posit that the alleged threats were substantially motivated by Rupport's own request that Torello and his wife "give [him] a break," a statement which they argue does not constitute protected activity.

Ruppert has not alleged specific facts showing that the alleged threat was substantially motivated by his exercise of constitutionally protected activity. Defendants' exhibits show that the grievances Ruppert filed against Torello's wife dated to December 2008 and January 2009, over one year before the alleged threat, and Ruppert provides no evidence or allegations of any later grievances against Torello's wife. Although Ruppert points out that the threat allegedly occurred only a matter of weeks after he had served the remaining defendants in his first federal lawsuit, Torello's wife had been dismissed from that action almost five months earlier and was in fact never served prior to dismissal. *See Ruppert I*, Doc. 46 (D.N.M. Sept. 22, 2009) (order dismissing Torello's wife and other defendants). Nonetheless, even if Ruppert's grievances against Torello's wife had occurred closer to the time of the threat, and even if the service on the other defendants in the first lawsuit somehow informed Torello of the previously dismissed claims against his wife, "temporal proximity between protected activity and a challenged prison action does not, in itself, demonstrate the causal nexus for a retaliation claim." *Strope v.*

*Cummings*, 381 F. App'x 878, 883 (10th Cir. 2010) (unpublished) (citations omitted); *see also Friedman v. Kennard*, 248 F. App'x 918, 922 (10th Cir. 2007) (unpublished) (citations omitted).

Yet instead of providing specific facts supporting his claim, Ruppert's own description of the encounter suggests that no mention of the grievances or the previous lawsuit was made at the time Torello voiced his threat. Rather, judging from Ruppert's version of events, the alleged threat merely targeted his "informal, verbal complaints" to Torello about his wife, and such activity is not protected for purposes of a First Amendment retaliation claim. *See St. Louis v. Morris*, 573 F. Supp. 2d 846, 853 (D. Del. 2008); *see also Gomez v. Allan*, No. 1:13-CV-84-SNLJ, 2013 WL 6264969, at *4 n.3 (E.D. Mo. Dec. 4, 2013) (unpublished) (citing numerous cases to this effect). The Tenth Circuit has previously affirmed summary judgment for defendants in analogous cases where the prisoner presented no facts or evidence to support his retaliation claim and where his own allegations supported the defendants' more innocuous explanations for the supposedly adverse actions. *See, e.g.*, *Strope v. McKune*, 382 F. App'x 705, 709-10 (10th Cir. 2010) (unpublished) (noting a lack of specific facts showing that removal from a prison job related to the prisoner's complaints to the governor rather than the prisoner's stated fear of safety in that job); *Cummings*, 381 F. App'x at 883 (rejecting prisoner's unsupported speculation that he was forced to miss religious services as retaliation for his grievances rather than due to isolated mistakes by administrators). In the absence of specific facts supporting Ruppert's claim, the Court should not depart from this pattern. *See Peterson*, 149 F.3d at 1144.

Because Ruppert does not establish that his constitutionally protected activity substantially motivated Torello to threaten him, he cannot prevail on his First Amendment retaliation claim against Torello. Accordingly, I recommend that the Court grant Defendants' motion as to this claim.

*iii.*        *Retaliation Claims Regarding Falsified Reports and Destroyed Evidence*

Ruppert alleges that Rodgers, Rivera and Vigil fabricated reports to support a disciplinary charge against him in retaliation for his first federal lawsuit, then destroyed the supporting evidence. The evidence in question consisted of mail addressed to other inmates, allegedly per Ruppert's request, that was used to support the 2012 fraud charge against him. Defendants do not provide any affidavits addressing the ultimate disposition of the mail, though they do attach an exhibit featuring a memorandum from Rodgers to Vigil stating that the mail was eventually "issued to necessary inmates" (Ex. K at 17), apparently referring to the inmates to whom the mail was addressed.

Ruppert offers nothing more than conclusory allegations and statements of belief that any reports or evidence was fabricated or destroyed, and such assertions have no probative value at summary judgment. *See Argo*, 452 F.3d at 1200; *Fitzgerald*, 403 F.3d at 1143. Though Ruppert mentions the claim of destruction of evidence in passing in his response (Doc. 33 at 7), his only support for this brief statement—an exhibit that simply shows that the box "NA" is checked next to the words "Physical Evidence Presented" in the warden's final adjudication of the disciplinary charge (Doc. 33 Ex. 3 at 1)—does not suffice to create a genuine issue of material fact as to whether evidence was destroyed. As to the purported falsification of evidence, Ruppert points to the use of photocopies of the mailings in question in his disciplinary proceedings as "affirmative proof" that "prison officials can fabricate reports." Yet even assuming that the general use of photocopies of evidence in disciplinary proceedings implies that evidence could conceivably be falsified, it has no bearing on whether the report or evidence actually used against Ruppert was falsified.

Further, Ruppert's complaint and response brief propose no motivation whatsoever for any destruction of evidence by these Defendants, let alone "substantial[] motivation." *See McBeth*, 598 F.3d at 717. Even if I construe Ruppert's filings as suggesting that evidence was fabricated or destroyed because of the first lawsuit or other protected activity, Ruppert offers no specific facts supporting this allegation—indeed, nothing more than speculation—as to Rodgers, and he offers nothing but conjecture as to Vigil and Rivera's motivation by suggesting family connections to Rodgers. Because there are no genuine issues of material fact as to Ruppert's retaliation claim against Rodgers, Vigil, and Rivera, Defendants are entitled to summary judgment on this claim.

### iv.    Retaliation Claims Against Rodgers Individually

Ruppert alleges that Rodgers "tried to employ inmates to attack [him]" in March 2012 in retaliation for his pursuit of grievances and legal claims against Rodgers. For Ruppert's allegation to be treated as a sworn statement from an affidavit, he must allege facts based on his personal knowledge. *Hall*, 935 F.2d at 1111; *see also* FED. R. CIV. P. 56(c)(4). However, Ruppert instead insists that he learned about Rodgers's efforts from an anonymous "older hispanic man," and he does not provide an affidavit from that inmate or any other allegations or evidence that Rodgers actually attempted to arrange for other inmates to attack him. As Defendants correctly note, this rumor from an unnamed person constitutes hearsay under Federal Rules of Evidence 801(c) and 802, and as such it is not admissible evidence and may not serve to create a genuine issue of material fact for summary judgment purposes. *See Thomas v. Int'l Bus. Machs.*, 48 F.3d 478, 485 (10th Cir. 1995) ("[A] third party's description of [a witness's] supposed testimony is not suitable grist for the summary judgment mill." (quotation omitted)); *Stevens v. Barnard*, 512 F.2d 876, 879 (10th Cir. 1975) ("[G]eneralized, conclusory, unsubstantiated, non-personal

affidavits are insufficient to successfully oppose a motion for summary judgment.") In the absence of any specific facts or supporting evidence from Ruppert as to his allegations, Defendants should be granted summary judgment on this claim.

Ruppert also claims that Rodgers stopped his outgoing legal mail on and after August 28, 2012. However, he does not refer to any particular mailings which were stopped or slowed at the time, and he provides no support for this assertion based on personal knowledge. Conversely, Defendants provide mail logs and an affidavit from the GCCF mailroom coordinator showing that Ruppert's outgoing mail was not impeded. Though Ruppert accuses Defendants of falsifying the facility's mail logs, his purported proof for this assertion—unrelated disciplinary forms with various alleged procedural defects, attached to Ruppert's summary judgment response (Doc. 33 Exs. 4, A-D, A1 & A2)—has no bearing on the matter.

Defendants also submit an affidavit from the legal assistant for defense counsel in the first federal lawsuit, who acknowledges that her office received mail from Ruppert one day after the prison logs recorded that mail was sent to that office. Defendants further note that Ruppert sent mail to the Supreme Court on October 16, 2012, and that the Supreme Court recorded the filing of Ruppert's petition for rehearing as of that same date. This latter point is notable because Ruppert alleges in his complaint that the cessation of his outgoing mail prevented him from timely seeking reconsideration of the Supreme Court's denial of his petition for writ of certiorari; in fact, the petition was denied on October 1, 2012, and thus Ruppert's petition for rehearing was apparently filed well within the required time frame. *See* U.S. SUP. CT. R. 44(2). Finally, Ruppert presents nothing more than speculative allegations that the alleged halting of his outgoing mail was motivated by his constitutionally protected activities. Given Defendants' evidence and the

absence of specific facts from Ruppert to the contrary, Ruppert has failed to present a genuine issue of material fact as to this matter, and Defendants are entitled to summary judgment.

### CONCLUSION

For the foregoing reasons, I recommend that the Court grant Defendants' motion for summary judgment (Doc. 30) and enter judgment in favor of Defendants. I further recommend that Defendants' motion to strike (Doc. 34), Ruppert's Motion for Judgment on the Pleadings (Doc. 39), and Ruppert's "Motion of Redirect Side Barr Notation on Life Sentence" (Doc. 40) each be denied.

---

**THE PARTIES ARE NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the Proposed Findings and Recommended Disposition. If no objections are filed, no appellate review will be allowed.**

---

William P. Lynch
United States Magistrate Judge

A true copy of this order was served
on the date of entry--via mail or electronic
means--to counsel of record and any pro se
party as they are shown on the Court's docket.